IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| KAREN BOYD, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:11-cv-0841 |
| | ) | Chief Judge Haynes |
| v. | ) | |
| | ) | |
| NASHVILLE LIMO BUS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Plaintiff, Karen Boyd, filed this action under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. 201 et seq., against the Defendant, Nashville Limo Bus, LLC, her former employer. Plaintiff's claims are that Plaintiff was a non-exempt employee and Defendant denied her overtime compensation and minimum wage under the FLSA for two years. Plaintiff also alleges that Defendant willfully violated the FLSA by failing to pay Plaintiff overtime and federal minimum wage.

Before the Court is Plaintiff's motions for partial summary judgment on whether Plaintiff was a non-exempt employee under the FLSA and for summary judgment for Defendant's alleged discovery abuses. (Docket Entry No. 19 and 20 at 15-20). In response, Defendant contends, in sum: (1) that Plaintiff signed an independent contractor agreement; (2) that Defendant did not control or supervise Plaintiff's performance; and (3) questions of control and independent contractor status are for the jury. (Docket Entry No. 30).

## A. Findings of Fact[1]

Defendant's primary business is transporting vehicles for dealers and auctions in the Nashville, Tennessee area. (Docket Entry No. 20-1, McCurtry's Deposition at 26:12-14). Plaintiff was a driver of transport cars for Defendant from 2010 to 2011. Id. at 26:15-17. Defendant classified Plaintiff as an independent contractor. (Docket Entry No. 21, Plaintiff's Statement of Undisputed Facts at 2). After consulting with his certified public accountant, Tracy McCurtry, Defendant's general manager and owner, classified Plaintiff as an independent contractor. (Docket Entry No. 20-1, McCurtry's Deposition at 34:12-18). According to McCurtry, Defendant "tr[ies] to . . . stay in compliance" with the FLSA. Id. at 14:4-7.

On March 3, 2012, without negotiation of any terms, Plaintiff signed the Defendant's "Driver Agreement," stating:

- I understand that I am a contract labor driver for Nashville Limo and Transport.

- I understand that I will be paid as a 1099 worker.

- I will not smoke in any vehicle in which I am driving or riding.

- I will not speed.

- I will not use the cell phone for phone calls or text messages while driving.

- I will not eat or drink in any vehicle that I am driving.

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) app. 840 f.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52, 106 S.Ct. 2502, 91 L.Ed.2d 202 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, 276 (1986). Under Local Rule 56.01(g), a "failure to respond to a moving party's statement of material facts, . . . within the time provided . . . shall indicate that the asserted facts are not disputed for purposes of summary judgment." Local Rule 56.01(g). Defendant did not respond to Plaintiff's statement of undisputed facts. Thus, Plaintiff's statements of undisputed facts on the non-exempt status are deemed undisputed by the Court for purposes of summary judgment. This section constitutes findings of fact under Fed.R.Civ.P. 56(d).

> • I will stay with my group and agree not to make any personal stops.
>
> • I will not turn on the radio, open the convertible top or sunroof on any vehicle that I am driving.
>
> • I understand that Nashville Limo is not under any obligation to call me on a daily basis. Nashville Limo has the right to pick and choose whenever and whomever they want to work.

(Docket Entry No. 20-1, McCurtry's Deposition at 59). Nashville Limo's drivers must sign the "Driver Agreement" without negotiating the terms. (Docket Entry No. 21, Plaintiff's Statement of Undisputed Facts at 2). Plaintiff testified that she was responsible for her taxes during her work as a driver. (Docket Entry No. 20-2, Boyd's Deposition at p 69:15-19).

Defendant employs van drivers who set Plaintiff's work schedule and pay the fuel and maintenance costs for the vehicles that Plaintiff drove. (Docket Entry No. 21, Plaintiff's Statement of Undisputed Facts at 2; Docket Entry No. 20-1, McCurtry's Deposition at 27:13-15). Each morning, Defendant's van driver transported Plaintiff to the scheduled location for Plaintiff to drive vehicles for the day. Id. at 18:16-19. Defendant paid Plaintiff on a "flat per-route basis," for each trip, but not the number of hours she worked. (Docket Entry No. 21, Plaintiff's Statement of Undisputed Facts at 4).

Defendant did not maintain records of Plaintiff's daily work hours. (Docket Entry No. 21, Plaintiff's Statement of Undisputed Facts at 2). Instead, Defendant tracked Plaintiff's hours by a van's time records, reflecting the time the van left each morning and returned each evening. (Docket Entry No. 21, Plaintiff's Statement of Undisputed Facts at 3). The van's time records generally reflect that vans leave around 9:00 a.m. and return around 6:00 p.m. on an average day. Id. Yet, workdays can begin as late as 11:00 a.m. and end as late as 9:00 p.m. Id.

Plaintiff did not have any responsibility for Defendant's billing or administrative tasks. Id. at 4. Plaintiff did not purchase any materials or employ other drivers for the Defendant. Id. Plaintiff's only responsibility was to drive cars from "point A to point B." Id. at 5. Plaintiff drove only regular passenger vehicles, not commercial vehicles. Id. The only prerequisite for driving was a valid driver's license and proof of automobile insurance. Id. at 4.

### B. Conclusions of Law

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56. "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 advisory committee notes. Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment</u>. Factual disputes that are irrelevant or unnecessary will not be counted.

4

Id. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Electrical Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex, 477 U.S. at 326. Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989); see also Routman, 873 F.2d at 971.

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Celotex Court:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

477 U.S. at 323 (emphasis deleted).

As the Sixth Circuit explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239 n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must

set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex, 477 U.S. at 322 and Rule 56(e)).

Once the moving party meets its initial burden, the Sixth Circuit warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion. . . . [and] must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby, 477 U.S. at 251, 255). Moreover, the Sixth Circuit explained that

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (citations omitted); see also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790 (6th Cir. 1990) (quoting Liberty Lobby, 477 U.S. at 151-52) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.").

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.</u>
> \* \* \*
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material

6

> fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'</u>

Liberty Lobby, 477 U.S. at 248, 252 (citations omitted and emphasis added).

It is likewise true that

> [I]n ruling on motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Sixth Circuit stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d. 43, 46 (6th Cir. 1986) (citation omitted).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of."
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the

> nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (citation omitted). In this district, the parties must provide specific references to the proof upon which they rely. See Local Rule 56.01(c) (requiring each party to provide a statement of undisputed facts to which the opposing party must respond).

In Street v. J.C. Bradford & Co., 886 F.2d 1472 (6th Cir. 1989), the Sixth Circuit discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing `the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the `scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are

material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the `old era' in evaluating the respondent's evidence. The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.

Id. at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) whether the moving party "clearly and convincingly" established the absence of material facts; (2) if so, whether the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense; (3) if factual support is presented by the nonmoving party, whether those facts are sufficiently plausible to support a jury verdict or judgment under the applicable law; and (4) whether there are any genuine factual issues with respect to those material facts under the governing law?

### 1. The Employment Relationship

Under the FLSA, "[w]hether an employment relationship exists under a given set of circumstances 'is not fixed by labels that parties may attach to their relationship nor by common law categories nor by classifications under other statutes.'" Solis v. Laurelbrook Sanitarium & Sch., Inc., 642 F.3d 518, 522 (6th Cir. 2011) (quoting Powell v. United States Cartridge Co., 339 U.S. 497, 528

(1950). "Rather, it is the 'economic reality' of the relationship between the parties that determines whether their relationship is one of employment or something else." Solis, 642 F.3d at 522 (citing Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 301 (1985)). To distinguish between an employee and an independent contractor, "courts have focused on 'whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself.'" Id. at 523.

> Under FLSA regulations, the "economic reality" test considers six following criteria:
>
> (1) The nature and degree of control of the putative employer's control as to the manner in which the work is performed;
>
> (2) The putative employee's opportunity for profit or loss depending upon his/her managerial skill;
>
> (3) The putative employee's investment in equipment or materials required for the task, of the putative employee's employment of other workers;
>
> (4) Whether the services rendered by the putative employee require special skill;
>
> (5) The degree of permanency and duration of the working relationship; and
>
> (6) The extent to which the services rendered by the putative employee are an integral part of the putative employer's business.

29 C.F.R. § 500.20(h)(4)(i)-(vi).

The intent of the parties and their contractual designations do not control the inquiry into whether an employment relationship existed. LeMaster v. Alternative Healthcare Solutions, Inc., 726 F. Supp.2d 854, 860 (M.D. Tenn. 2010). "'[T]he FLSA is designed to defeat rather than implement contractual arrangements.'" Imars v. Contractors Mfg. Servcs., Inc., No. 97-3543, 1998 WL 598778 (6th Cir. Aug. 24, 1998) (quoting Sec'y of Labor v. Lauritzen, 835 F.2d 1529, 1544 (7th Cir. 1987) (Easterbrook, J. concurring)). The Defendant contends that its Driver Agreement should control in

this action. Yet, under FLSA precedent, the Court concludes that the Defendant's Driver Agreement with Plaintiff does not control her employment status. Accordingly, the Court considers the totality of the circumstances to determine whether summary judgment is appropriate on the question of Plaintiff's employment status.

### a. Degree of Defendant's Control over Plaintiff's Work

Plaintiff contends that Defendant "controlled nearly every aspect of Plaintiff's work" and cites: (1) Defendant's scheduling of appointments for Plaintiff; (2) Defendant's payment of the vehicles' fuel and maintenance needs; (3) Defendant's setting of Plaintiff's work days; and (4) Defendant's Driver Agreement requiring Plaintiff to refrain from smoking in the vehicles, speeding, using the cell phone, eating or drinking, and using the radio or sunroof in any vehicle Plaintiff drove. (Docket Entry No. 20 at 9-10). In response, Defendant cites: (1) Plaintiff's ability to refuse driving assignments or routes at any time, Plaintiff's ability to work elsewhere, and Plaintiff's performance of her services alone without any supervision. (Docket Entry No. 30 at 3).

In a similar factual setting in McLaughlin v. Morgantown Yellow Cab Co., 706 F.Supp. 448 (N.D. W. Va. 1988), the court held that the taxi cab drivers were employees of the cab company, not independent contractors. Id. at 451. In McLaughlin, the "single most important factor underlying" its holding was the "degree of control retained by the defendants, including the requiring of contractual reporting of location, the setting of work schedules, and the requirement that gas be purchased from the Cab Company." Id.

Here, Defendant controlled every aspect of Plaintiff's work. Defendant set the work day, work hours, and work locations. The Court concludes that Defendant's pervasive control over the Plaintiff's work favors a finding of an employment relationship.

### b. Plaintiff's Opportunity for Profits or Losses

"The question under the opportunity for profit or loss factor is whether Plaintiffs' earnings were tied to their performance once they accepted work. It is the mark of an independent contractor that a stake in the venture provides both carrot and stick, such that planning, efficiency and skill are rewarded above and beyond the initial contract." Wilson v. Gaurdian Angel Nursing, Inc., No. 3:07-0069, 2008 WL 2944661, at *14 (M.D. Tenn. July 31, 2008). Plaintiff contends that this factor favors an employment relationship because Plaintiff lacked any opportunity for profit or loss. (Docket Entry No. 20 at 11). The undisputed fact is that Defendant paid Plaintiff a flat rate per route and did not negotiate the terms of the Driver Agreement. Id. The Court concludes that this factor favors a finding of an employment relationship because Plaintiff did not have any opportunity for profits or losses.

### c. Plaintiff's Investment in Equipment or Materials

"The capital investment factor is most significant if it reveals that the worker performs a specialized service that requires a tool or application which he has mastered or that the worker is simply using implements of the [alleged employer] to accomplish the task." Donovan v. Brandel, 736 F.2d 1114, 1118-19 (6th Cir. 1984). Both parties agree that Plaintiff did not have any authority or responsibility to hire other workers or invest in equipment or materials. (Docket Entry No. 20 at 12). The only requirement for Plaintiff's work was that she had a valid driver's license and proof of insurance. Id. The Defendant provided everything necessary for Plaintiff's performance. Thus, the Court concludes that this factor favors an employment relationship.

### d. Required Degree of Skill

"'[S]kills are not the monopoly of independent contractors.' The question under the skills

factor is whether the worker's skills are 'more like a piecework than an enterprise that actually depended for success upon the initiative, judgment or foresight of the typical independent contractor." Wilson, 2008 WL 2944661 at *13(quoting Lauritzen, 835 F.2d at 1537).

Plaintiff contends that her work did not require any special skill, but only the ability "to drive an ordinary vehicle from one place to another." (Docket Entry No. 20 at 13). Defendant contends that driving vehicles requires a "significant degree of skill," citing Bonnetts v. Arctic Express, Inc., 7 F. Supp.2d 977 (S. D. Ohio 1998), holding that vehicle drivers are independent contractors, not employees. Id. at 981. Yet, the Bonnets reference is to **driving trucks** as requiring a "significant degree of skill," not passenger cars. Id. ("It is undisputed that driving a truck containing large loads of cargo requires a significant degree of skill. The job requires the skill of handing a large vehicle, detailed knowledge of the national roadways, and a high level of stamina to be able to make long trips without fatigue."). Here, Plaintiff does not have a commercial driver's license requiring a high degree of skill; instead, Plaintiff drives only ordinary passenger vehicles. Thus, Defendant's reliance on Bonnetts is misplaced and this factor also favors a finding of an employment relationship.

### e. Permanency of Working Relationship

"A permanent working relationship supports a finding of employee status." LeMaster, 726 F. Supp.2d at 861. Plaintiff contends that this factor also favors an employment relationship because Defendant hired Plaintiff for an indefinite period of time. (Docket Entry No. 20 at 14). In addition, Plaintiff asserts that she was unable to engage in meaningful alternative work because of the long hours she worked for Defendant. Id. Defendant responds that Plaintiff was free to engage in alternative work, even for competitors. (Docket Entry No. 30 at 3). The Court concludes that this factor favors finding an employment relationship because Plaintiff's work for Defendant was

indefinite and the length of Plaintiff's work day limited her from alternative meaningful work.

### f. Whether Plaintiff's Services are Integral to Defendant's Business

Plaintiff asserts that "transporting cars is at the very core of Defendant's business" and that Plaintiff's work of transporting cars was integral to Defendant's business. (Docket Entry No. 20 at 15). In <u>Donovan v. Brandel</u>, 736 F.2d 1114 (6th Cir. 1984), the Sixth Circuit analyzed whether workers were economically dependent on the Defendant's business as part of the sixth factor. <u>Id.</u> at 1120. The Sixth Circuit considered: (1) whether the worker was subject to long hours at low wages; (2) whether similar work was available elsewhere; and (3) whether the alleged employer unilaterally controlled the rate of pay. <u>LeMaster</u>, 726 F. Supp.2d at 863.

Here, there is insufficient evidence on whether similar work was available elsewhere or whether the Plaintiff's work was subject to long hours at low wages. Yet, the undisputed facts are that Defendant unilaterally controlled Plaintiff's rate of pay and Plaintiff was unable to negotiate the terms of the Driver Agreement. In addition, based on the "details about the nature of [Defendant's] business model, . . . it seems fair to conclude that [Plaintiff and the other drivers] are integral to a company in the business [of transporting cars]." <u>LeMaster</u>, 726 F. Supp.2d at 863. Thus, the Court concludes that Plaintiff's driving services were integral to Defendant's business model and this fact weighs in favor of finding an employment relationship.

In sum, considering the economic realities factors, the Court finds that the undisputed facts establish: (1) that Defendant controlled the Plaintiff's work; (2) that Plaintiff did not have any opportunity for profits or losses; (3) that Plaintiff lacked any investment in equipment of materials or any authority to hire other workers; (4) that Plaintiff's work as a driver did not require any special skills as Plaintiff only drove passenger vehicles; (5) that Plaintiff's work as a driver was for an

indefinite period of time; and (6) that Plaintiff's driving services were integral to Defendant's business of transporting vehicles from place to place. Thus, the Court concludes that Plaintiff's motion for partial summary judgment on the issue of non-exempt employee status under the FLSA, should be granted.

### 2. Spoilation and Failure to Disclose Evidence

Plaintiff also moves for summary judgment based upon Defendant's spoilation of evidence and failure to disclose evidence to Plaintiff's prejudice. For her motion, Plaintiff cites the Defendant's failure to disclose the documents described in its response to Plaintiff's interrogatory until after the Rule 30(b)(6) deposition. (Docket Entry No. 20 at 16). Plaintiff alleges the Defendant identifies but fails to produce time-stamped video evidence for the times the Nashville Limo vans departed and returned each day. Id. at 17. In addition, Plaintiff contends that Defendant failed to disclose the testimony and business records from Defendant's clients that reflect the hours Plaintiff worked. Id. In response, Defendant contends that Plaintiff "has never filed a motion to compel, requested discovery sanctions, or otherwise alerted this Court to any discovery dispute. By asserting any dispute now, at the dispositive motion stage, Plaintiff has violated the spirit, if not the letter, of Local Rule 37.01." (Docket Entry No. 20 at 4). Additionally, Defendant asserts that the requested documents are not covered under Plaintiff's written discovery requests. Id.

The Court has "the inherent power to control the judicial process" and impose sanctions for spoiliated evidence. Adkins v. Wolever, 554 F.3d 650, 652 (6th Cir. 2009). "[A] proper spoilation sanction should serve both fairness and punitive functions." Id. The Court "could impose many different kinds of sanctions for spoiliated evidence, including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence;" yet, the

severity of a sanction should correspond to the party's fault. Id. at 652-53.

Here, without a prior motion to compel discovery and actual proof of destruction or prejudice, Plaintiff's motion for summary judgment for Defendant's alleged discovery failures should be denied.

### C. Conclusion

For these reasons, the Court concludes that Plaintiff's motion for partial summary judgment on whether Plaintiff was a non-exempt employee should be granted.

An appropriate Order is filed herewith.

ENTERED this 16th day of October, 2012.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court